UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

STEVEN L. HANSON
522  15th Street
Baraboo, WI  53913

      Plaintiff,

      v.                       Case No: 17-CV-0879

KALAHARI DEVELOPMENT LLC,      **JURY TRIAL DEMANDED**
d/b/a KALAHARI RESORT &
CONVENTION CENTER
1305 Kalahari Drive
Wisconsin Dells, WI  53965

      Defendant.

---

## COMPLAINT

---

COMES NOW the Plaintiff, Steven L. Hanson, by his counsel, HEINS EMPLOYMENT LAW PRACTICE LLC, by Attorneys Janet L. Heins and Alan Freed, Jr., as and for a claim against the Defendant, alleges and shows to the court as follows:

### JURISDICTION AND VENUE

1.      This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case involves a federal question under the Americans with Disabilities Act Amendments Act of 2008 as amended (ADAAA), 42 U.S.C. §12101 *et seq.,* as amended, and Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. § 2000e *et seq.*

2.      The unlawful employment practices giving rise to the Plaintiff's claims occurred within the Western District of Wisconsin, and venue is therefore proper in this District pursuant to 28 U.S.C § 1391(b), *inter alia.*

**THE PARTIES**

3.     Plaintiff, Steven L. Hanson, is an adult male resident of the State of Wisconsin, residing in Sauk County at 522  15th Street, Baraboo, Wisconsin 53913.

4.     Defendant, Kalahari Development LLC, doing business as Kalahari Resort & Convention Center, was, at all times material herein, a domestic limited liability company with a principal address of 1305 Kalahari Drive, Wisconsin Dells, Wisconsin 53965.

**THE FACTS**

5.     Plaintiff interviewed with Defendant's Facilities Manager, Jeff Beckwith, in December, 2014, for a position as a Shift Supervisor.  During his interview, Plaintiff disclosed his disability of back problems due to degenerative disc disease.

6.     Beckwith also knew Plaintiff from church in the past, and he knew that Plaintiff had a back injury and shoulder injury at work on March 26, 2014 at his prior employer, RR Donnelly, for which Plaintiff filed a worker's compensation claim against RR Donnelly.  Beckwith also knew that Plaintiff had a heart attack on April 5, 2014 and had open heart surgery on April 29, 2014, while he was still off for the worker's compensation injury.

7.     Defendant hired Plaintiff on or about December 19, 2014 as Third Shift Maintenance Supervisor, subject to a probationary period.  Beckwith was his direct supervisor.

8.     Defendant received federal Work Opportunity Tax Credits for hiring Plaintiff with a qualifying disability under IRS rules.

9.     Plaintiff passed his probation and was promoted to Third Shift Maintenance Supervisor on or about March 19, 2015, the position he held until termination of his employment on or about November 30, 2016.

10.     At all times material herein, Plaintiff suffered from the disabilities of degenerative

2

disc disease and sciatica.

11.    Plaintiff's sincerely held religious beliefs are Seventh Day Adventist.

12.    At all times material herein, Plaintiff performed his work duties in accordance with the reasonable expectations of the Defendant.

13.    Defendant is a covered employer for purposes of the ADAAA and Title VII.

14.    At all times material herein, Defendant maintained an "open door" policy, stating that "Through the open door process Associates may discuss and seek resolution of an issue up through senior management and at any time may seek additional assistance from Human Resources."

15.    Plaintiff suffered serious injuries in a head-on auto collision on or about March 26, 2015, in which he sustained head, back, and knee injuries.

16.    Plaintiff suffered a work injury on or about August 20, 2016, which exacerbated his degenerative disc disease and caused him to be diagnosed with sciatica.

17.    After the injury, Plaintiff worked in great pain and did not move as quickly as he had before the injury.

18.    Plaintiff then received harassing emails about his competency, and someone placed a "slow moving vehicle" sign on Plaintiff's file cabinet at work.

19.    Plaintiff reported the disability harassment to Beckwith, who took no action.

20.    Every time Plaintiff put his tool box in the secure community work area for maintenance employees, one certain employee made sure it was pushed out into the hallway outside the locked door and unprotected.

21.    At a work meeting initiated by Beckwith for Defendant's employees to get to know each other, when prompted to disclose a fact that others would not know about him, Plaintiff stated

that he believed in the Ten Commandments and commented about how some people at work took the Lord's name in vain.

22.    At the next team meeting on Saturday, Plaintiff led the meeting.  People made comments in the meeting about religion again and having to work on weekends.  Plaintiff stated that he is a Seventh Day Adventist and that his Sabbath was on Saturday.  Plaintiff never requested that Defendant not require him to work on Saturdays.

23.    After these incidents relating to Plaintiff's religion, on September 19, 2016, Plaintiff discovered that someone had drilled a hole through a Bible, bolted it and chained it to his work cart.

24.    Plaintiff was severely negatively affected by the Bible defacement that was unmistakably directed solely at him, and he felt that the negative comments about his religion and the Bible defacement were intolerable religious discrimination and harassment against him.

25.    At the end of his shift on September 19, 2016, Plaintiff reported the Bible defacement incident to Beckwith as severely offensive religious harassment and asked him to do something about it.

26.    Beckwith responded by telling Plaintiff that he did not have time to look through video footage pertaining to Plaintiff's "petty concerns."  Beckwith took no action to investigate Plaintiff's complaint of religious harassment.

27.    Plaintiff then utilized Defendant's "open door policy" to complain to Defendant's owner, Todd Nelson, in an email on September 19, 2016, stating in part that he wanted "video documentation of WHO put a bolt through a red holy bible that was and a chain in the indoor maint shop and then walked out of the shop to hang it on the tool box I donated to third shift…."  Plaintiff included a photo of the defaced Bible chained to his work toolbox.

28.    Nelson responded to Plaintiff, "Sorry this happened to You. I have forwarded this

4

onto Jeff Beckwith and my son Todd Jr.  Todd"

29.     Nelson forwarded Plaintiff's email to Beckwith, noting "This is quite strange.  Jeff please deal with.  Yikes."

30.     Defendant retaliated against Plaintiff for complaining of religious discrimination in his "open door policy" email.

31.     Beckwith gave Plaintiff a "coaching" form dated September 19, 2016, for "violation of policy/procedure"  stating, "Under no circumstance do we e-mail Todd Nelson with a situation that could be handled within our department.  We have talked about conflict resolution in the past at various times.  Everyone has been told that it is handled at its 'lowest possible level.'  E-mailing Mr. Nelson to inform him of this situation is completely uncalled for and should never happen again." Beckwith noted that he "met with Steve on this issue at 6:30 am on 9/23/16.  He refused to sign."

32.     Defendant falsely claims that it investigated Plaintiff's complaint and that it was resolved by September 25, 2016.

33.     In a communication on Defendant's behalf dated December 19, 2016 with the Unemployment Insurance Division, Defendant's HR Manager, Anna Rogers, acknowledged, "[Beckwith] did write [Plaintiff] up for contacting the owner about his complaints that were not founded."

34.     Other employees of Defendant evinced their desire for Plaintiff to leave Defendant by doing things like leaving a single boot on his desk and by tying a bag to Plaintiff's locker for him to pack his things in and leave.

35.     On November 6, 2016, Plaintiff emailed Hugh Schavier, Beckwith's supervisor at Defendant, with the subject line "Direct improvement," asking for help in handling what happened the previous Saturday morning.  Plaintiff noted in part, "Do I write up Joan? as I started the meeting

he made a comment that I did not hear and then told Louis and Gus they had to go and not listen to the meeting.  OR do I just let it go and understand that harassment and intimidating is part of the way to many people in this world to get their point across some are not welcome.  If I do not agree with something I do not undermine or break others attempts; I offer suggestions of better ways."

36.     Schavier then forwarded Plaintiff's email to Beckwith, who called a meeting the following day, November 7, 2016, with Plaintiff and his peers and read the private email deceptively, which created a hostile work environment for the Plaintiff.

37.     Plaintiff documented the meeting in an email to Rogers, Schavier and Beckwith beginning with "In reference to a harassment concern on the date of 11-7-2016 at approximately 7:15 AM."  Plaintiff noted in part, "From the readings and training I have had in the past and the present it is un-ethical to create a hostile work environment leaving me with every right to take appropriate action while working in a place where fair employment practices are supposedly used; I had to leave the meeting to correct it.  I understand also that a suggestion was made a long time ago in the united states that it is not wise to take a person and chain them to a stake in the middle of town and throw harmful and untrue items at them." (emphasis in original).

38.     After leaving the meeting on November 7, 2016, Plaintiff immediately went to Defendant's Human Resources to complain about his discriminatory treatment.

39.     Plaintiff was forced to attend another meeting with Beckwith and Rogers on November 11, 2016.

40.     On November 16, 2016, Plaintiff called the Kalahari Safety Hotline and referred to his unresolved religious harassment complaint about the defaced Bible; Rogers received the call and set a meeting for December 2, 2016 with Plaintiff.

41.     On November 27, 2016, Plaintiff emailed Beckwith about his safety concerns over a

6

missing fire extinguisher outside the locked elevator room in all locations. Beckwith responded the following afternoon by rejecting those concerns.

42. On November 28, 2016, Plaintiff emailed Joan Garcia, Sands Maintenance Supervisor, with some routine maintenance concerns he noted upon inspection of the property managed by his subordinate.

43. Garcia responded to Plaintiff with an angry, insubordinate email stating, "You could've taken care of those issues, but AGAIN you like to passed it on to others just like Jeff [Beckwith] said on the morning meeting, it's a lot easy to spend 2 hours making up an email to talk about it huh! STOP! If your not going to fix the issues don't email me about issues in the sands building, if you actually get yourself off of the front of the computer once an while you might accomplish some actual WORK. Or if your not competent enough to do it, let me know (by email I guess thats your thing) I'LL DO IT FOR YOU!!"

44. On November 30, 2016, Plaintiff emailed Nelson to say "Just been verbally evicted from my other dream and I used to pray to God for assistance. I just hope that even though I stood up for YOUR companies founded or displayed beliefs no one within the company had anything to do with my compromised situation. I will be leaving the Kalahari as soon as I possibly can."

45. Defendant deliberately misquoted Plaintiff's email to the Equal Rights Division in a letter dated February 22, 2017, stating: "On 11-30-2016 Hanson sent an email to the Kalahari owner, Todd Nelson, with a subject line of 'Moving on'. Included in the text of the email was: '…*no one within the company had anything to do with my compromised situation. I will be leaving Kalahari (sic) as soon as I possibly can*'."

46. In response to Plaintiff's email, Defendant's HR Manager, Anna Rogers, called Plaintiff immediately and told him that she accepted his resignation.

7

47.     Defendant terminated Plaintiff's employment for reporting illegal discrimination and harassment in the workplace.

48.     After receiving the phone call from Rogers, Plaintiff emailed Nelson, stating, "Just received a phone call from Anna stating I turned in a resignation which I did not.  I am simply alerting you that things are going wrong.  I read a daily promise that says you want A players and I am showing you that people there have to lose their authenticity to become one.  I need a job and I have done nothing to hurt your dream.  I did not turn I'm a resignation.  Did Anna fire me?"

49.     Shortly after that on November 30, 2016, Plaintiff emailed Nelson, "I know you have people that you hire to do what is best for your company.  Am I fired or let go?  I did not quit I never quit.  I did not turn in a resignation.  All I did was give your employees a map so they can serve you better."

50.     On December 1, 2017, Beckwith texted Plaintiff about his availability to meet. Plaintiff texted back, "1 pm?  Hr or your office?  I did not quit."

51.     Defendant refused to allow Plaintiff to return to work.

52.     On January 12, 2017, Plaintiff filed an employment discrimination complaint against Defendant with the Wisconsin Equal Rights Division ("ERD") as ERD Case No. CR201700159 and cross-filed with the U.S. Equal Employment Opportunity Commission ("EEOC") as EEOC Case No. 26G201700410C, alleging religious discrimination, disability discrimination and retaliation by Defendant.

53.     On February 21, 2017, Beckwith gave a false sworn affidavit to the Equal Rights Division that stated in paragraph four, "at no time during his employment at Kalahari did Hanson tell me or anyone else at Kalahari to my knowledge that he suffered from a disability or was physically limited in the type of work he could perform."

8

54.     In a statement to the Equal Rights Division dated February 22, 2017, Defendant acknowledged, "Kalahari concedes that Hanson engaged in protected activity in reporting alleged discrimination in the workplace and in his reporting of a workplace injury."

55.     The EEOC issued Plaintiff a Notice of Right to Sue in this case on August 18, 2017.

56.     Plaintiff has exhausted all of his administrative remedies and has satisfied all conditions precedent to bringing this action.

### FIRST CLAIM FOR RELIEF — ADAAA DISCRIMINATION

57.     Plaintiff realleges and incorporates paragraphs 1-56 of this complaint by reference.

58.     Defendant discriminated against Plaintiff based on his disabilities in the terms and conditions of his employment in intentional and/or reckless disregard of his federally protected rights under the ADAAA, 42 U.S.C. § 12101 *et seq.*

59.     As a result of Defendant's intentional discrimination, Plaintiff has suffered damages in the form of lost wages, lost employment benefits, and emotional distress.

### SECOND CLAIM FOR RELIEF — TITLE VII RELIGIOUS HARASSMENT

60.     Plaintiff realleges and incorporates paragraphs 1-59 of this complaint by reference.

61.     Defendant intentionally harassed Plaintiff on the basis of his religion in the workplace in intentional and/or reckless disregard of his federally protected rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

62.     As a result of Defendant's intentional retaliation, Plaintiff has suffered damages in the form of severe emotional distress. These damages continue into the present and will continue into the foreseeable future.

### THIRD CLAIM FOR RELIEF — TITLE VII RETALIATION

63.     Plaintiff realleges and incorporates paragraphs 1-62 of this complaint by reference.

64.     Defendant intentionally retaliated against Plaintiff by terminating him for opposing discrimination in the workplace in intentional and/or reckless disregard of his federally protected rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

65.     As a result of Defendant's intentional retaliation, Plaintiff has suffered damages in the form of lost wages, lost employment benefits, and emotional distress. These damages continue into the present and will continue into the foreseeable future.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1.     Order Defendant to make Plaintiff whole by providing appropriate back pay and benefits, front pay and/or reinstatement, compensatory and punitive damages, pre-judgment and post-judgment interest, and reimbursement for other benefits and expenses in an amount to be shown at trial;

2.     Grant to Plaintiff his attorney fees, costs and disbursements as provided by 42 U.S.C. § 12117, 42 U.S.C. § 2000e-5, and all other applicable statutes and provisions; and

3.     Grant to Plaintiff whatever other relief this Court deems just and equitable.

**PLAINTIFF DEMANDS A JURY TRIAL BY A JURY OF TWELVE.**

Dated this 17th day of November, 2017.

HEINS EMPLOYMENT LAW PRACTICE LLC
Counsel for the Plaintiff

*s/ Janet L. Heins*
Janet L. Heins, State Bar No. 1000677

HEINS EMPLOYMENT LAW PRACTICE LLC
1001 West Glen Oaks Lane, Suite 101
Mequon, WI  53092
(262) 241-8444 voice
(262) 241-8455 facsimile
e-mail: jheins@heinslawoffice.com

10